## HOTEL AND RESTAURANT EMPLOYEES, LOCAL 25, AFL–CIO, Plaintiff,

v.

## The MADISON HOTEL, Defendant.

### Civ. A. No. 90–0555.

United States District Court, District of Columbia.

Sept. 5, 1990.

Emilie N. Junge, Hotel & Restaurant Employees Local 25, AFL–CIO, Washington, D.C., for plaintiff.

Joanne Ochsman, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for defendant.

## ORDER

CHARLES R. RICHEY, District Judge.

The plaintiff ("the Union") and the defendant ("the Hotel") are parties to a collective bargaining agreement ("the Agreement") covering certain employees, including bellmen. The Agreement contains a broad arbitration clause providing for arbitration "in the event a grievance or misunderstanding arises out of and during the term of this Agreement." Agreement, Art. XVII § 17.1 (attached to Complaint). After the Hotel discharged Lazaro Mouriz—a bellman and Union member—for "misconduct," the Union filed a grievance on his behalf. However, when the Union invoked the Agreement's arbitration provisions, the Hotel refused on the grounds that the Union previously had expressly waived its right to arbitrate this dispute. That prompted the Union to file this lawsuit seeking an order compelling the Hotel to arbitrate. Upon consideration of the parties' cross-motions for summary judgment and oppositions, the underlying law, and the entire record herein, the Court will order the Hotel to arbitrate the dispute over Mouriz's discharge in accordance with the terms of the Agreement.

Although this case is now before the Court on cross-motions for summary judgment, the normal summary judgment standard must be applied somewhat differently when arbitrability is at issue. In a dispute over the *scope* of a broad arbitration

clause,[1] the party seeking to avoid arbitration faces an uphill battle against the strong presumption favoring arbitration and the "federal policy in favor of arbitration." *National R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 760 (D.C.Cir.1988); *see also Becker Autoradio USA, Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 44 (3d Cir.1978).[2] The Supreme Court has made it clear that

> where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said *with positive assurance* that the arbitration clause is *not susceptible* of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor of coverage.*"

*AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (emphasis added) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)); *see Hanes Corp. v. Millard*, 531 F.2d 585, 598 (D.C.Cir.1976) ("in construing arbitration agreements, every doubt is to be resolved in favor of arbitration"); *see also Becker Autoradio*, 585 F.2d at 44.

Viewing the parties' evidence in light of the foregoing standards, the Court cannot say with "positive assurance" that the arbitration clause in the Agreement together with the parties' subsequent discussions are not susceptible of an interpretation that covers this grievance. The Hotel argues

(and supports with an affidavit from one of its attorneys) that it initially discharged Mouriz for "misconduct" in March 1989 and that, at the Union's request during the grievance process, the Hotel agreed to reinstate Mouriz—but only subject to an express oral agreement between the parties that if he engaged in "*any* further misconduct" he would be discharged and the Union would not seek arbitration. *See* Siegel Affidavit ¶ 3 (emphasis added). Therefore, in October 1989, when Mouriz transported the Hotel's Greek typewriter and let it fall and break, the Hotel again discharged him for "misconduct" and refused the Union's arbitration demand on the ground that it had expressly waived the right to seek arbitration for Mouriz.

The Union has a similar report of what occurred,[3] but its account of the agreement leading to Mouriz's reinstatement differs from the Hotel's version in one important respect. The Union contends (and supports with a declaration by one of its officers) that Mouriz was reinstated with the express agreement that the Hotel could terminate him, and the Union would not seek arbitration, for "a *repetition* of that *type* of conduct." Richardson Declaration ¶ 5 (emphasis added). Consequently—the Union argues—since the misconduct causing Mouriz's initial (March 1989) termination was different from the typewriter mishap that precipitated the termination at issue here, there was no waiver and the Hotel may not avoid its contractual duty to arbitrate.[4]

While an *oral* agreement modifying arbitration rights under the written Agreement

1. This dispute over the coverage of a valid arbitration clause is different from that category of arbitrability cases involving "disputes over the *formation* of an agreement to arbitrate—i.e., whether the parties ever agreed to submit *anything* to arbitration in the first place." *National R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 761 (D.C.Cir.1988) (emphasis added).

2. The Union brings this lawsuit under the Labor Management Relations Act which governs "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Although the Union does not rely upon the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–15, which governs dis-

putes over written arbitration provisions contained in any contract involving commerce, *see id.* §§ 1, 2, cases resolving arbitrability disputes under the FAA, as well as cases applying general principles of federal law on arbitration, are relevant to this arbitrability dispute arising out of a collective bargaining agreement.

3. The Union does not dispute that Mouriz admitted breaking the typewriter and that he offered to pay for it.

4. Since neither party has specified what type of "misconduct" caused Mouriz's initial termination, the Court is in no position to determine whether the subsequent typewriter incident was similar or entirely different conduct.

is not per se invalid, that the Union's waiver of arbitration was not reduced to writing makes it difficult for the Hotel to present evidence sufficient to overcome the presumption favoring arbitrability. As the Supreme Court has stated, " '[i]n the absence of any *express* provision excluding a particular grievance from arbitration, we think *only the most forceful evidence* of a purpose to exclude the claim from arbitration can prevail.' " *AT & T Technologies, Inc.,* 475 U.S. at 650, 106 S.Ct. at 1419 (emphasis added) (quoting *Warrior & Gulf,* 363 U.S. at 584–85, 80 S.Ct. at 1354). Nor does raising the waiver defense reduce the Hotel's heavy burden because "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or *an allegation of waiver,* delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr.,* 460 U.S. 1, 25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Thus, if this case were about nothing more than the Union's word against the Hotel's word as to the precise scope of the arbitration waiver agreement, the presumption favoring arbitration would tip the scales slightly in the Union's favor. However, here the Hotel has made the outcome much more clear by adding weight to the Union's side of the scales. Although the Union's position throughout its papers is that it agreed to waive arbitration only if Mouriz's subsequent conduct leading to his termination were similar to the earlier (March 1989) type of misconduct, the Hotel's position is less consistent. Most of the time it contends that the Union agreed that it could discharge Mouriz for any further misconduct without facing arbitration, but in its reply—by which point this issue had come into focus—the Hotel supports the Union's version of the waiver agreement: "The Affidavits submitted by the parties state that [the Union] and [the Hotel] agreed that *a repetition of [Mouriz's] misconduct* would result in his discharge, which would not be subject to arbitration." Defendant's Reply Memorandum at 5 (emphasis added).

In sum, because the Hotel has not rebutted the presumption in favor of arbitration by presenting *forceful* evidence of an express agreement to exclude this dispute from the Agreement's broad arbitration provision, the Court will order the Hotel to submit this dispute over Mouriz's termination to arbitration in accordance with the Agreement. In addition, since an order to arbitrate is the only relief that the Union seeks, nothing remains for this Court to resolve, *see Matterhorn, Inc. v. NCR Corp.,* 763 F.2d 866, 870 (7th Cir.1985) (Posner, J.), and this case may be dismissed.

Accordingly, it is, by the Court, this 4th day of September, 1990,

ORDERED that the plaintiff's Motion for Summary Judgment shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the defendant's Cross–Motion for Summary Judgment shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the parties shall submit their dispute over Lazaro Mouriz's termination to arbitration in accordance with the terms and provisions of their collective bargaining agreement; and it is

FURTHER ORDERED that the above-captioned case stands DISMISSED from the Court's docket.